# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PERCY CHARLES DONER,      )
              **Plaintiff**     )     **C.A. 10-58 Erie**
                     )
      **v.**             )     **District Judge McLaughlin**
                     )     **Magistrate Judge Baxter**
BRADLEY MASON, et al.,    )
              **Defendants.**    )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

It is respectfully recommended that Defendants' motion to dismiss [ECF No. 15], herein treated as a motion for summary judgment under Rule 56, be granted.

### II.    REPORT

#### A.    Relevant Procedural History

On March 8, 2010, Plaintiff Percy Charles Doner, a prisoner formerly incarcerated at the McKean County Prison in Smethport, Pennsylvania ("MCP"),[1] filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Bradley Mason, Warden at MCP ("Mason"), David Stahlman, Assistant Warden at MCP ("Stahlman"), and Rick Austin, Assistant Warden at MCP ("Austin"). In his *pro se* Complaint [ECF No. 3], Plaintiff claims that Defendants were deliberately indifferent to his health and safety, and to his serious medical needs, in violation of the eighth and fourteenth amendments to the United States Constitution.

On July 20, 2010, Defendants filed a motion to dismiss Plaintiff's complaint [ECF No. 15], asserting, *inter alia*, that Plaintiff has failed exhaust his administrative remedies with regard

---

[1]

Plaintiff is presently incarcerated at the State Correctional Institution at Rockview in Bellefonte, Pennsylvania.

to his claims and, alternatively, has failed to state a claim of deliberate indifference upon which relief may be granted.  Plaintiff filed a memorandum in opposition to Defendant's motion on August 16, 2010 [ECF No. 18]; however, because Defendants submitted a number of exhibits with their motion, this Court issued an Order on January 28, 2011, advising the parties that Defendants' motion will be treated as motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, and providing Plaintiff an additional 30 days to supplement his response accordingly. [ECF No. 21].  Plaintiff has since filed a supplement in opposition to summary judgment. [ECF No. 22].  This matter is now ripe for consideration.

## B.      Relevant Factual History

Plaintiff alleges that on or about June 12, 2008, he had an in person meeting with Defendant Stahlman concerning his safety and well-being because he had been receiving threats of bodily harm from his fellow inmates at MCP. (ECF No. 3, Complaint, at Section V). Plaintiff alleges that he made several verbal requests to be moved from his cell block for protection, but that his concerns and requests were ignored. (Id. at Section IV.b, V).  Plaintiff alleges further that he was told that threats and harassment were not grievable issues and, thus, he was denied grievance forms. (Id. at Section IV.b, c).

On July 2, 2008, at approximately 8:00 p.m., an inmate named Jayme Middlebrough entered Plaintiff's cell and assaulted him, causing serious injuries to Plaintiff's left eye. (ECF No. 15-2).  The next morning, Plaintiff sought medical attention from the prison nurse, who had Plaintiff transported to the Bradford Regional Medical Center emergency room.  Plaintiff was then transported to Jamestown, New York, for specialized care and was thereafter treated by Samuel Wong, M.D., an ophthalmologist. (ECF Nos. 15-3, 15-4, and 15-5).

## C.      Standards of Review

### 1.      Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

The Third Circuit expounded on the *Twombly/Iqbal/Phillips* line of cases:
> To prevent dismissal, all civil complaints must now set out "sufficient
> factual matter" to show that the claim is facially plausible. This then

"allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct."

* * *

[A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. **First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief.** A complaint has to "show" such an entitlement with its facts. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" This "plausibility" requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)(emphasis added)(citations omitted).


2. **Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine as to any material fact and that the moving party is entitled to a judgment as matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of showing the basis for its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(non-movant must present affirmative evidence-more than a scintilla but less than a preponderance-to support his claims). When deciding a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-movant. Bailey v. United Airlines, 279 F.3d 194, 198 (3d

4

Cir. 2002) quoting Battaglia v. McKendry, 233 F.3d 720, 722 (3d Cir. 2000).  Nonetheless, a party opposing summary judgment must do more than rest upon mere allegations, general denials, or vague statements, rather, "the party opposing the motion must go beyond its pleadings and designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing there is a genuine issue for trial."  In re Ikon Office Solutions, 277 F.3d 658, 666 (3d Cir. 2002).

On a motion for summary judgment, the district court may not weigh the credibility or weight of the evidence, rather, it may only determine the existence of a triable issue of fact.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).  A genuine issue is one in which the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### 3. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers"  Haines v. Kerner, 404 U.S. 519, 520 (1972).  If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements.  See Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969)("petition prepared by a prisoner... may be inartfully drawn and should be read 'with a measure of tolerance'"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991).  Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant.  Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997)(overruled on other grounds).  See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).  Because Plaintiff is a *pro se* litigant, this Court will

consider facts and make inferences where it is appropriate.

### D. Exhaustion of Administrative Remedies

Defendants contend that Plaintiff's complaint should be dismissed for failure to comply with the exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), which provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id.[2]

### 1. Exhaustion Standard

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[3] The exhaustion requirement is not a technicality, rather it is

---

[2]

It is not a plaintiff's burden to affirmatively plead exhaustion. Jones v. Bock, 549 U.S. 199, 217 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be asserted and proven by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

[3]

Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that ¢1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

federal law which federal district courts are required to follow.  Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").[4]

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ...").  Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83; see also Spruill v. Gillis,  372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) (" Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

## 2. The Administrative Process Available to State Inmates

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'  The level of

---

[4]

There is no "futility" exception to the administrative exhaustion requirement.  Banks v. Roberts, 2007 WL 3096585, at * 1 (3d Cir.) citing Nyhuis, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'").  See also Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Indeed, as we held in Booth, a prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.").

detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 107 U.S. at 217.

MCP's Inmate Manual, which is provided to each inmate at the time of commitment, outlines the grievance procedure inmates are required to follow. (See ECF No. 15-7 at pp. 2-3). First, an inmate desiring to file a formal grievance must submit a written grievance form to the Officer in Charge within seven (7) days after a "potentially grievable event has occurred." (Id. at p. 2, ¶ E). After accepting the form, the Officer in Charge will attempt to reach an informal resolution of the grievance. If an informal resolution cannot be reached within twenty-four (24) hours, the Officer in Charge will refer the grievance to the Assistant Warden. (Id. at p. 2, ¶ F). The Assistant Warden may then seek to resolve the grievance through an informal resolution, or through a formal resolution in which all remedies and dispositions are proposed in written form within five (5) days. (Id. at p. 2, ¶ G). If the inmate is dissatisfied with the Assistant Warden's disposition of the grievance, he may file an appeal to the Warden within two (2) days of his receipt of the Assistant Warden's response. The Warden will then issue a final decision, in writing, within five (5) days after receiving the inmate's appeal. (Id. at p. 3, ¶¶ H-I).

### **3.** **Analysis**

In support of their contention that Plaintiff failed to exhaust his administrative remedies, Defendants have submitted the Affidavit of Defendant Mason, who declares, in pertinent part:

> 21. The McKean County Prison records further reveal that Percy Doner filed formal prison grievances on December 25, 2007, March 12, 2008, and July 7, 2008....
>
> 22. The importance of the grievances previously filed by Percy Doner are that the McKean County Prison previously allowed Doner to file a grievance regarding the alleged lack of medical treatment (see Grievance dated December 25, 2007), allowed him to grieve very minor issues (see Grievance dated March 12, 2008), and that the McKean County Prison allowed Mr. Doner to file a grievance after the assault of July 2, 2008 (see Grievance dated July 7, 2008).

23.     Further, McKean County Prison records show that in the grievance filed by Percy Doner on July 7, 2008, <u>5 days after the assault</u>, Mr. Doner made no complaints about the prison's alleged failure to protect him and/or the alleged lack of medical treatment Mr. Doner claims he experienced after the assault.

24.     Other than the above ... grievances, there are no additional written complaints made by Percy Doner regarding his incarceration at the McKean County Prison at or near the time of this incident.

(ECF No. 15-1 at ¶¶ 21-24)(emphasis in original).

Plaintiff has failed to provide any documentary evidence to contradict Defendant Mason's declaration that he failed to file a grievance regarding the prison's alleged failure to protect him and/or the alleged lack of medical treatment he claims to have experienced after the assault. The record does reflect that grievance forms were made available to Plaintiff after the date of the assault, as he did, in fact, file a grievance on July 7, 2008, only five days after the assault. However, that grievance made no reference to the assault or any alleged lack of medical care. (See ECF No. 15-9). Thus, it is clear that Plaintiff failed to exhaust his administrative remedies with regard to his claim that Defendants' were deliberately indifferent to his serious medical needs after the assault of July 2, 2008. Accordingly, summary judgment should be granted in favor of Defendants with regard to such claim.

Nonetheless, the Court is unable to recommend the same result with regard to Plaintiff's claim that Defendants were deliberately indifferent to his health and safety by ignoring his concerns regarding the threats he was receiving from other inmates. Although it is apparent that Plaintiff never filed a formal grievance with regard to this issue, the Court cannot overlook Plaintiff's claim that he was denied grievance forms and was told that threats and harassment were not grievable issues. This allegation by Plaintiff raises a genuine issue of material fact as to whether administrative remedies were made available to him with regard to his Eight Amendment failure to protect claim. As a result, the Court will turn to the merits of such claim.

**E.      Discussion**

To succeed on an Eighth Amendment claim alleging a failure to protect, a plaintiff must show that:  (1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists;" (3) the defendant actually drew that inference; and (4) the defendant deliberately disregarded the apparent risk.  Farmer v. Brennan, 511 U.S. 825, 834-37 (1994).

In determining whether a defendant was deliberately indifferent, the court must "focus [on] what a defendant's mental attitude actually was (or is), rather than what it should have been (or should be)."  Hamilton v. Leavy, 117 F.3d 742, 747 (3d Cir. 1997).  "A prison official's knowledge of a substantial risk is a question of fact and can, of course, be proved by circumstantial evidence."  Id.  "In other words, it may be concluded that a prison official knew of a substantial risk from the very fact that the risk was obvious."  Jones v. Day, 2007 WL 30195 at *4 (W.D.Pa. Jan. 4, 2007).  For instance:

> [I]f an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past,' and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

Farmer, 511 U.S. at 842-43 (citations omitted).

"Thus, in order to survive defendant's summary judgment motion, a plaintiff is obligated to produce sufficient evidence to support the inference that defendants 'knowingly and unreasonably disregarded an objectively intolerable risk of harm.'"  Jones at * 4, quoting Beers-Capitol v. Whetzel, 256 F.3d 120, 132 (3d Cir. 2001).  "It is not enough to assert that a defendant should have recognized the risk; the evidence must be sufficient to support the inference that 'the defendant must have recognized the excessive risk and ignored it.'"  Jones at *4, quoting Beers-Capitol, 256 F.3d at 138.  Nonetheless, "Farmer made clear that a prison official defendant cannot escape liability by showing that he did not know that *this* particular

inmate was in danger of attack: 'it does not matter ... whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk.'" Beers-Capitol v. Whetzel, 256 F.3d 120, 131 (3d Cir. 2001), quoting Farmer, 511 U.S. at 843.

Here, Plaintiff contends that Defendants failed to protect him because they ignored his verbal concerns that he was being threatened by other inmates. In particular, Plaintiff recounts a meeting he had with Defendant Stahlman approximately three weeks prior to the assault, which he claims was recorded on videotape. During this meeting, Plaintiff allegedly expressed concerns about his "safety and well-being under threats of bodily harm by fellow inmates...." (ECF No. 3, Complaint, at Section V).

In his affidavit in support of Defendants' motion to dismiss, Defendant Mason declares that "[p]rior to the assault of July 2, 2008, [Plaintiff] did not make any complaints to prison staff that he was receiving verbal or other threats from other inmates." (ECF No. 15-1 at ¶ 14). In addition, Defendant Mason declares that "at no time did Assistant Warden Dave Stahlman conduct a videotaped interview of [Plaintiff]." (Id. at ¶ 15). Even though this affidavit has not been opposed by Plaintiff's own affidavit or other evidence, as provided in Rule 56(e)(2) of the Federal Rules of Civil Procedure, the Court is unwilling to accept Defendant Mason's statements as fact since he is essentially making representations on behalf of Defendant Stahlman, to whom Plaintiff allegedly voiced his concerns. Thus, there remains a genuine issue of material fact as to whether Plaintiff expressed concerns regarding his safety to Defendant Stahlman, as alleged in the complaint.

Nonetheless, even assuming *arguendo* that Plaintiff did inform Defendant Stahlman that he was being threatened by "fellow inmates," such a generalized concern is insufficient to support an inference that Defendant Stahlman "'must have recognized the excessive risk [of an impending assault] and ignored it.'" Jones at *4, quoting Beers-Capitol, 256 F.3d at 138. Moreover, there is no evidence of record suggesting "that a substantial risk of inmate attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the

past,'" nor do the circumstances suggest that the Defendants "had been exposed to information concerning the risk and thus 'must have known' about it." <u>Farmer</u>, 511 U.S. at 842-43 (citations omitted). Thus, the evidence of record is not "sufficient to permit a trier of fact to find that the [Defendants] had actual knowledge of the risk" that Plaintiff would be assaulted. For this reason, summary judgment should be granted in favor of Defendants on Plaintiff's Eighth Amendment failure to protect claim.

**III**     **CONCLUSION**

For the foregoing reasons, it is respectfully recommended that Defendant's motion to dismiss [ECF No. 15], herein treated as a motion for summary judgment under Rule 56, be granted.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of some appellate rights. <u>See</u> <u>Nara v. Frank</u>, 488 F.3d 187 (3d Cir. 2007).


<u>/s/ Susan Paradise Baxter</u>
SUSAN PARADISE BAXTER
United States Magistrate Judge


Dated: February <u>28</u>, 2011

cc:     The Honorable Sean J. McLaughlin
        United States District Judge